# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC EMMERICK, | Case No.: 1:17-cv-01160- DAD - JLT |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS |
| v. | |
| RIDGECREST REGIONAL HOSPITAL, et al., | ORDER DISMISSING THE COMPLAINT WITH LEAVE TO AMEND |
| Defendants. | |

Marc Emmerick seeks to proceed *pro se* and *in forma pauperis* in this action against Ridgecrest Regional Hospital, its CEO, the Chairperson of the Board of Directors, the Safety and Regulatory Compliance Manager, a patient advocate, and a pay agent. (*See* Doc. 1) According to Plaintiff, the defendants are liable for violations of federal and state law due to the disclosure of medical records without Plaintiff's permission. Because Plaintiff fails to allege facts sufficient to support his claims, the complaint is **DISMISSED** with leave to amend.

**I.      Proceeding *in forma pauperis***

The Court may authorize the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such person . . . possesses [and] that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a). The Court reviewed the financial status affidavit (Doc. 4), and finds the requirements of 28 U.S.C. § 1915(a) are satisfied. Therefore, Plaintiff's request to proceed *in forma pauperis* is **GRANTED**.

## II. Screening Requirement

When a plaintiff proceeds *in forma pauperis*, the Court is required to review the complaint, and shall dismiss the complaint if it is "frivolous, malicious or fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. 1915(e)(2). A plaintiff's claim is frivolous "when the facts alleged arise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

## III. Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). Further, a plaintiff must identify the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks and citations omitted). Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 566 U.S. at 678 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions in the pleading are not entitled to the same assumption of truth. *Id.*

The Court has a duty to dismiss a case at any time it determines an action fails to state a claim, "notwithstanding any filing fee that may have been paid." 28 U.S.C. § 1915e(2). Accordingly, a court "may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim." *See Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357 at 593 (1963)). However, leave to amend a complaint may be granted to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

## IV. Factual Allegations

Plaintiff alleges that he "had prior dealings" with Janice Kern at Ridgecrest Regional Hospital in 2013, during which Ms. Kern made a comment that Plaintiff's injuries meant "more free Money (sic) for [him]." (Doc. 1 at 12) He reports that in August 2015, he discussed "an overdue balance and negotiations with a third party payer for a settlement agreement." (*Id.*) Ms. Kern "asked Plaintiff if he would like her to send [the third party] an invoice to see if they would pay the hospital so that she could 'clear the books.'" (*Id.*)

He alleges that on August 28, 2015, Ms. Kern sent a facsimile "from Ridgecrest Regional Hospital to an open facsimile machine at a non-covered entity." (Doc. 1 at 10) Plaintiff asserts "the facsimile contained information beyond the minimum necessary required for billing purposes" and "protected health information of the Plaintiff." (*Id.* at 10-11) Plaintiff contends Ms. Kern "did not have Plaintiff's authorization to send any protected health information to any party." (*Id.* at 10) Further, he alleges the facsimile "was openly available and viewed by the non-covered entity's personnel." (*Id.*)

According to Plaintiff, the facsimile sent by Ms. Kern contained information that "was highly sensitive, deeply personally hurtful and erroneous." (Doc. 1 at 11) He contends, "It was also harmful because Plaintiff and the person to [whom]… the information [was] disseminated are in financial negotiations." (*Id.*) He asserts the receipt of the information "lead to a breakdown in negotiations … to

3

| | |
|---|---|
| 1 | settle an injury claim" and the "payment of [an] overdue Emergency Rule debt." (*Id.*) Plaintiff alleges |
| 2 | the inclusion of the treatment sheets by Ms. Kern "was a deliberate malicious effort with the 'Specific |
| 3 | Intent' to derail those negotiations." (*Id.* at 12) Further, Plaintiff asserts Ridgecrest Regional Hospital |
| 4 | then placed the debt into collections, which has damaged his credit. (*Id.* at 11, 12) |

Plaintiff asserts he visited the billing office again on September 1, 2015 and spoke to Ms. Kern. (Doc. 1 at 15) Plaintiff reports Ms. Kern informed him "of a second visit bill for [his] injury that also had not been paid." (*Id.*) According to Plaintiff, Ms. Kern "then sent another facsimile to the third party for payment." (*Id.*) Plaintiff alleges he "attempted to discuss the breach with Janice Kern and found her unreceptive," though Ms. Kern gave Plaintiff the phone number for Kristen Henden, a patient advocate. (*Id.* at 8, 15) He reports he "began leaving message at that number on Tuesday September 1st" but "no one returned his calls." (*Id.* at 15)

He alleges that on September 5, 2015, he "received a certified Letter on Ridgecrest Regional Hospital letterhead from Stephanie Meeks whom at the time was the Privacy officer." (Doc. 1 at 15) Plaintiff asserts, "The letter was in reference to another matter however Plaintiff observed that Stephanie Meeks had included an assurance that Ridgecrest Regional Hospital had policies and procedures to protect his Privacy." (*Id.*) He reports Ms. Meeks included "a telephone number where Plaintiff could leave a message if he had any questions," which Plaintiff called "repeatedly" but "his messages were not returned." (*Id.*)

Plaintiff reports he went to the hospital several times throughout September 2015, attempting to speak to Ms. Meeks or Ms. Hendon. (Doc. 1 at 15) He asserts the attempts were "unsuccessful," and the hospital staff "seemed unable to assist" him in speaking with Ms. Meeks and Ms. Hendon. (*Id.*)

The following month, Plaintiff hand-delivered "a litigation hold outlining what should be done to preserve any possible evidence should there be a lawsuit." (Doc. 1 at 15) After this delivery, Plaintiff met with Amy Anderson, who "explained that Stephanie Meeks and Kristin Henden had been in the process of exchanging jobs, [and] that their positions had changed causing many delays." (*Id.* at 16) At a subsequent meeting, Plaintiff was informed that James Suver, a supervisor, had determined "the release was made in the normal course of business" and there was not a violation. (*Id.*)

According to Plaintiff, defendants James Suver and Dana Lyons "knowingly fail[ed] to properly

| | |
|---|---|
| 1 | supervise and adequately train their employees in the basic fundamentals of privacy rules. (Doc. 1 at |
| 2 | 13) Thus, Plaintiff contends Mr. Suver and Ms. Lyons "subjected Plaintiff to unnecessary and wanton |
| 3 | infliction of emotional pain and financial harm thereby violating his rights." (*Id.*) |

Based upon the foregoing facts, Plaintiff identifies the following causes of action: (1) unlawful disclosure of private health information in violation of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320, *et seq.*; (2) wrongful disclosure of protected health information in violation of 42 U.S.C. § 1320; (3) violation of California's Confidentiality of Medical Information Act; (4) conspiracy in violation of 42 U.S.C. § 1985; (5) conspiracy in violation of 18 U.S.C. § 241; (6) negligence; (7) deliberate indifference in violation of 42 U.S.C. § 1983; (8) violation of the right to privacy under state law; (9) violation of Cal. Health & Safety Code §1280.15; (10) violation of Cal. Civ. Code §§ 56 and 56.37; (11) violation of Cal. Health & Safety Code §130200; and (12) negligence under state law.

## V. Discussion and Analysis

### A. HIPAA Violations

Plaintiff contends defendants Janice Kern, Ridgecrest Hospital, Dana Lyons, and James Suver are liable for violating the Health Insurance Portability and Accountability Act ("HIPAA") through the unlawful and wrongful disclosure of Plaintiff's health information. (Doc. 1 at 10, 12)

The purpose of HIPAA is "to improve the … efficiency and effectiveness of the health information system through the establishment of standards and requirements for the electronic transmission of certain health information." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1083 (9th Cir. 2007) (quoting HIPAA § 261, Pub. L. 104-191, 110 Stat. 1936 (codified at 42 U.S.C. § 1320d notes)) In doing so, HIPAA "authorizes the Secretary of Health and Human Services to 'adopt standards' that will 'enable health information to be exchanged electronically, . . . consistent with the goals of improving the operation of the health care system and reducing administrative costs.'" *Id.* (citing 42 U.S.C. § 1320d-2). In addition, the standards are intended to "ensure the integrity and confidentiality of individuals' health information and protect against . . . unauthorized uses or disclosures of the information." *Id.*

Significantly, however, there is no "private right of action to enforce HIPAA" when an

individual believes that a disclosure was wrongfully made. Webb, 499 F.3d at 1082. Because the statute does not provide a private right of action, and "does not provide a remedy in court for those persons who believe their [HIPAA] rights have been violated," Plaintiff is unable to state a cognizable claim for a HIPAA violation. *See Jackson v. Cnty. of Sacramento HHS,* 2017 U.S. Dist. LEXIS 58470 (E.D. Cal. Apr. 13. 2017). Consequently, his claims for HIPAA violations are **DISMISSED**.

### B. The Confidentiality of Medical Information Act

Plaintiff alleges defendants Janice Kern, Ridgecrest Regional Hospital, Dana Lyons, and James Suver are liable for a violation of the Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56-56.37 (Doc. 1 at 13), which "is intended to protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider, while at the same time setting forth limited circumstances in which the release of such information to specified entities or individuals is permissible." *Brown v. Mortensen*, 51 Cal. 4th 1052, 1070 (2011) (citations omitted).

Similar to HIPAA, the CMIA "establish[es] the basic prohibition against disclosure of a patient's medical information" by both health care providers and third party administrators. *Brown*, 51 Cal. 4th at 1070 (citing Cal. Civ. Code §§ 56.10(a), 56.26(a)). In general, "a provider of health care must not disclose medical information without a written authorization from the patient." *Id.* (citing *Pettus v. Cole* (1996) 49 Cal.App.4th 402, 425 (1996)); *see also Heller v. Norcal Mutual Ins. Co.* 8 Cal.4th 30, 38 (1994) ("in order to violate [CMIA], a provider of health care must make an unauthorized, unexcused disclosure of privileged medical information"). However, a disclosure may be either mandated or permitted by a health care provider under limited circumstances set forth in Sections 56.10(b)-(c). For example, situations a health care provider *must* disclose medical information where disclosure compelled by a court order, by a search warrant, or by a board pursuant to an investigative subpoena, among other circumstances that merit disclosure. Cal. Civ. Code § 56.10(b).

The CMIA also identifies many reasons a health care provider *may* disclose medical information without violating the act. *See* Cal. Civ. Code § 56.10(c)(1)-(22). For example, a health care provider may disclose information "to providers of health care, health care service plans, contractors, or other health care professionals or facilities for purposes of diagnosis or treatment of the patient." Cal. Civ. Code § 56.10(c)(1). In addition, disclosure is permitted "to an insurer, employer,

health care service plan, hospital service plan, employee benefit plan, governmental authority, contractor, or other person or entity responsible for paying for health care services rendered to the patient, to the extent necessary to allow responsibility for payment to be determined and payment to be made." *Id.*, § 56.10(c)(2). Likewise, disclosure may be made "to a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care or health care service plans…" *Id.*, § 56.10(c)(3).

Plaintiff alleges Ms. Kern sent a facsimile "from Ridgecrest Regional Hospital's Billing department to an open facsimile machine at a non-covered entity" on August 28, 2015. (Doc. 1 at 13, ¶ 21) Plaintiff contends the release of his information "caused the third party to withdraw from negotiations to settle an injury claim," after which "Defendant Ridgecrest Hospital … placed the Debt into collections in Plaintiff's name." (*Id.* at 14, ¶¶ 24-25) Further, Plaintiff alleges Ms. Kern "sent another facsimile to the third party for payment" on September 1, 2015. (*Id.* at 15, ¶ 33) Although Plaintiff does not identify the third party to whom the facsimile was directed, the facts alleged indicate the communications related to billing and payment for treatment Plaintiff received at Ridgecrest. Thus, the disclosure does not appear to violate the CMIA. *See* Cal. Civ. Code §§ 56.10(c)(2)-(3). Accordingly, Plaintiff fails to state a cognizable claim for a violation of the CMIA, and it is **DISMISSED**.

### C. Conspiracy under 42 U.S.C. § 1985(3)

Plaintiff contends defendants Kristen Hendon, Stephanie Meeks, James Suver, Dana Lyons, and Ridgecrest Regional Hospital are liable for conspiring to interfere with his civil rights under 42 U.S.C. § 1985(3). (Doc. 1 at 15)

"To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).

As an initial matter, a plaintiff seeking to state a Section 1985 claim "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without

7

factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Thus, a plaintiff must allege "the existence of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (citations omitted). A conspiracy may be alleged when a plaintiff states "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights." *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997).

Plaintiff alleges the defendants conspired, but fails to state how they did so. Further, to state a claim under Section 1985(3), which Plaintiff alleges the defendants violated, the facts alleged must "demonstrate a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002). Plaintiff fails to clearly identify a discriminatory animus, and the Court will not speculate as to the manner in which the defendants may have conspired, or as to their motivation in doing so. *See Bell Atlantic Corporation. v. Twombly,* 550 U.S. 544, 555 (2007) (a plaintiff must set forth more than labels and conclusions, and identify the "grounds of his entitlement to relief"); *see also Harris*, 126 F.3d at 1196. Given the lack of support by the factual allegations, Plaintiff's fourth cause of action for a conspiracy in violation of 42 U.S.C. § 1985(3) is not cognizable, and is **DISMISSED**.

### D. Violation of 18 U.S.C. § 241

Plaintiff alleges the defendants are liable for a conspiracy against his civil rights in violation of 18 U.S.C. § 241. (Doc. 1 at 18) However, Section 241 "is a criminal statute that does not accord a private right of action." *Armstrong v. Siskiyou County Sheriff's Dep't*, 2008 U.S. Dist. LEXIS 19455 at *34 (citing *Peabody v. United States*, 394 F.2d 175, 177 (9th Cir.1968)). Accordingly, Plaintiff's fifth cause of action fails as a matter of law, and his claim is **DISMISSED**.

### E. Failure to Train under 42 U.S.C. § 1983

Plaintiff contends defendants James Suver, Dana Lyons, and Ridgecrest Regional Hospital are liable for failure to properly train their employees in violation of 42 U.S.C. § 1983. (Doc. 1 at 21-22) According to Plaintiff, "reckless hiring, training, retraining, supervision, discipline, termination or other action or inaction, inter alia, resulted in violation of Plaintiff's privacy." (*Id.* at 2)

Section 1983 "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). An individual may bring a civil rights action pursuant to Section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

Significantly, "private parties are not generally acting under color of state law." *Price v. Hawaii*, 939 F.2d 702, 707-09 (9th Cir. 1991); *see also Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."). Consequently, the Ninth Circuit explained that "[w]hen addressing whether a private party acted under color of law, we . . . start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Medical Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). The Supreme Court has identified four tests to determine whether a private individual's actions implicate state action: (1) the public function test, (2) the joint action test, (3) the state compulsion test, and (4) the governmental nexus test. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997).

### 1. The public function test

The public function test inquires whether the private actor performs a public function that is "traditionally the exclusive prerogative of the state." *Parks School of Bus., Inc. v Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995). Notably, "the provision of medical services is a function traditionally performed by private individuals." *West*, 487 U.S. at 57 n.15; *see also Jackson v. East Bay Hospital*, 980 F. Supp. 1341, 1357 (N.D. Cal. 1997) (for purposes of Section 1983, a hospital was not a state actor even though it received state or federal funding and was subject to governmental regulation). Further, there are no factual allegations that support a conclusion that the defendants had, in essence, "become the government" to satisfy the public function test. *See Lee v. Katz*, 276 F.3d 550, 555 n.5

(9th Cir. 2002)

### 2. *The joint action test*

The Supreme Court explained, "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Lugar v. Edmonson Oil Co.*, 456 U.S. 922, 941 (1982) (citation omitted). The test examines whether a state has "'so far insinuated itself into a position of interdependence with the private actor that it must be recognized as a joint participant in the challenged activity." *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 607 (9th Cir. 1989) (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961)). Even an allegation that the defendants contracted with the government is insufficient to satisfy the joint action test. *See Ledet v. Cal. Waste Solutions, Inc.,* 2013 U.S. Dist. LEXIS 37214 at * 11 (N.D. Cal. Mar. 18, 2013) (finding the plaintiff failed to satisfy the joint action test where the only connection to the government were contracts between municipalities and the waste collection company). Plaintiff has not alleged facts demonstrating the defendants satisfy this test.

### 3. *The state compulsion test*

State action may be demonstrated where a state "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State." *Johnson*, 113 F.3d at 1119 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Plaintiff has not alleged any states' laws compelled the defendants to take the actions he alleges harmed him. Accordingly, Plaintiff's allegations are insufficient to satisfy this test.

### 4. *The nexus test*

The governmental nexus test inquires whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State of itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). Generally, the test requires evidence that the private actor is "entwined with governmental policies, or . . . [the] government is entwined in [the private actor's] management or control." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 296 (2001). The Ninth Circuit has identified

factors for the Court's consideration to determine whether there is a sufficiently close nexus including: "(1) the organization is mostly state institutions; (2) state officials dominate decision making of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor." *Villegas v. Gilroy Garlic Festival Assoc.*, 541 F.3d 950, 955 (9th Cir. 2008).

Plaintiff does not include any factual allegations in his complaint addressing the factors identified by the Ninth Circuit. Consequently, the Court is unable to conclude there is a significantly close nexus between Defendants and a state government to satisfy this test.

      *5. Conclusion*

Plaintiff fails to allege any facts supporting the conclusion that any of the four tests identified by the Supreme Court are satisfied, or that state action is implicated. Accordingly, the claim for a violation of Section 1983 is not cognizable, and Plaintiff's seventh cause of action is **DISMISSED**.

**F. Supplemental Jurisdiction**

The remaining claims in Plaintiffs complaint arise under state law. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." Significantly, the Ninth Circuit determined that "[w]hen federal claims are dismissed before trial . . . pendant state claims also should be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) (internal quotation marks omitted); *see also Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) (recognizing the propriety of dismissing supplemental state law claims without prejudice when the district court has dismissed the federal claims over which it had original jurisdiction).

At this juncture—because Plaintiff failed to state a cognizable claim under federal law—the Court declines to expend judicial resources analyzing the merits of his state law claims. Supplemental jurisdiction is declined over the state law claims, and they are likewise dismissed without prejudice.

**VI. Conclusion and Order**

Plaintiff fails to state a cognizable claim under federal law, thereby invoking this Court's jurisdiction. However, it is not clear whether the factual deficiencies may be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987); *see also Lopez*, 203 F.3d at 1128

(dismissal of a *pro se* complaint without leave to amend for failure to state a claim is proper only where it is obvious that an opportunity to amend would be futile). Therefore, Plaintiff will be given **one** opportunity to file an amended complaint curing the deficiencies identified in this order. The amended complaint must bear the docket number assigned this case and must be entitled "First Amended Complaint."

Plaintiff is advised that an amended complaint supersedes the original complaint. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). In addition, the amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. The amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint." Finally, Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986) (citing *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981).

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's request to proceed *in forma pauperis* (Doc. 4) is **GRANTED**;
2. Plaintiff's Complaint is **DISMISSED** with leave to amend; and
3. Within thirty days from the date of service of this order, Plaintiff **SHALL** file a First Amended Complaint.

**If Plaintiff fails to comply with this order to file a First Amended Complaint, the action may be dismissed for failure to prosecute and failure to obey the Court's order**.

IT IS SO ORDERED.

Dated: **February 8, 2018**            /s/ Jennifer L. Thurston
                                                  UNITED STATES MAGISTRATE JUDGE