UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC EMMERICK, </br></br> Plaintiff, </br></br> v. </br></br> RIDGECREST REGIONAL HOSPITAL, et al., </br></br> Defendants. | Case No.: 1:17-cv-1160- AWI - JLT </br></br> FINDINGS AND RECOMMENDATIONS DISMISSING THE ACTION WITHOUT PREJUDICE |

Marc Emmerick seeks to proceed *pro se* in this action against Ridgecrest Regional Hospital, its CEO, the Chairperson of the Board of Directors, the Safety and Regulatory Compliance Manager, a patient advocate, and a pay agent. (*See* Doc. 6) According to Plaintiff, the defendants are liable for violations of federal and state law due to the disclosure of his medical records without Plaintiff's permission. Because Plaintiff fails to allege facts sufficient to support his federal claims, the Court recommends the complaint be **DISMISSED** without prejudice.

I. **Screening Requirement**

When an individual seeks to proceed *in forma pauperis*, the Court is required to review the complaint and shall dismiss it, or portion of it, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2). A plaintiff's claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially

noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In other words, a complaint is frivolous where the litigant sets "not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court must review Plaintiff's First Amended Complaint because it supersedes the previously filed complaint. *See Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

## II. Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to inform the defendant of the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citations omitted). Vague and conclusory allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 556 U.S. at 679 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal

conclusions are not entitled to the same assumption of truth. *Id.* The Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III. Allegations[1]

Plaintiff asserts that he "has an organic mental disorder" and is disabled within the meaning of the Americans with Disabilities Act. (Doc. 6 at 11, 22) He reports that he was injured "in a slip and fall accident" while "a consumer at the Ridgecrest California Home Depot store." (*Id.* at 19, 38) Plaintiff sought treatment at Ridgecrest Regional Hospital for this injury. (*Id.* at 38) He reports that in August 2015, he discussed the fact that he was engaged in negotiations with Home Depot with Janice Kern, a "pay agent" at Ridgecrest Hospital. (*Id.* at 23) Plaintiff asserts Ms. Kern "asked Plaintiff if he would like her to send an invoice [to Home Depot] to see if they would pay the hospital so that she could 'clear the books.'" (*Id.*)

He alleges that on August 28, 2015, "Ms. Kern sent a facsimile from Ridgecrest Regional Hospital to an open facsimile machine at Home Depot, a non-covered entity." (Doc. 6 at 10) Plaintiff asserts "the facsimile contained complete treatment notes providing personal information beyond the minimum necessary required for billing purposes." (*Id.* at 18) Plaintiff contends Ms. Kern "did not have Plaintiff's authorization to send any health information to The Home Depot Inc." (*Id.* at 17) He asserts that authorization was only for a billing invoice to be sent, and "[n]o reference to Health records or any treatment sheets were made." (*Id.*) Further, he alleges the facsimile "was openly available and viewed by … The Home Depot Inc. personnel." (*Id.* at 18)

According to Plaintiff, the facsimile sent by Ms. Kern contained information that was "highly sensitive, deeply personally hurtful and erroneous." (Doc. 6 at 19) He contends, "It was also harmful because Plaintiff and The Home Depot Inc. to whom the information was disseminated were negotiating … their financial responsibility for Plaintiffs injury." (*Id.*) He asserts the receipt of the information "lead to The Home Depot Inc.'s decision to discontinue negotiations" and the "payment of [an] overdue Emergency Room debt." (*Id.* at 20) Plaintiff alleges the inclusion of his treatment sheets

---
[1] Although the First Amended Complaint (Doc. 6) supersedes the original Complaint (Doc. 1), some facts were omitted by Plaintiff in the amended pleading. To the extent necessary, the Court also refers to the original complaint to get a complete picture of the events identified by Plaintiff.

3

by Ms. Kern "was a deliberate malicious effort with the 'Specific Intent' to derail [the] negotiations." (*Id.* at 23) Further, Plaintiff asserts that Ridgecrest Regional Hospital then "placed the debt into collections," which has damaged his credit. (*Id.* at 31-32)

Plaintiff asserts he visited the billing office again on September 1, 2015 and spoke to Ms. Kern. (Doc. 6 at 42) Plaintiff reports Ms. Kern informed him "of a second visit bill for [his] injury that also had not been paid." (*Id.*) According to Plaintiff, Ms. Kern "then sent another unauthorized facsimile to The Home Depot Inc. for payment." (*Id.*) Plaintiff alleges he "attempted to discuss the breach with Janice Kern and found her unreceptive," though Ms. Kern gave Plaintiff the phone number for Kristen Hendon, a patient advocate. (*Id.*) He reports he "began leaving messages" for Ms. Hendon the same day, but "[n]o one returned his calls." (*Id.*)

He alleges that on September 5, 2015, he received a certified letter from Stephanie Meeks, Ridgecrest Regional Hospital's Privacy Officer. (Doc. 6 at 42) Plaintiff asserts, "The letter was in reference to another matter" (Doc. 1 at 15), but Ms. Meeks "included an assurance that Ridgecrest Regional Hospital had policies and procedures to protect his Privacy." (Doc. 6 at 43) He reports that Ms. Meeks included "a telephone number where Plaintiff could leave a message if he had any questions," which Plaintiff called and "left detailed messages," but "his messages were not returned." (*Id.*; Doc. 1 at 15)

Plaintiff reports he went to the hospital several times throughout September 2015, attempting to speak to Ms. Meeks or Ms. Hendon. (Doc. 1 at 15) He asserts the attempts were "unsuccessful," and the hospital staff "seemed unable to assist" him in speaking with Ms. Meeks and Ms. Hendon. (*Id.*)

In October 2015, Plaintiff hand delivered "a litigation hold outlining what should be done to preserve any possible evidence should there be a lawsuit." (Doc. 6 at 47) A few days after this delivery, Plaintiff met with Amy Anderson, Manger of the Health Information Management at the hospital, who "explained that Stephanie Meeks and Kristin Henden had been in the process of exchanging jobs. (*Id.* at 47) Ms. Anderson told Plaintiff this job exchange "caus[ed] many delays and … plaintiff had simply fallen through the cracks." (*Id.* at 47-48) However, Plaintiff contends Ms. Meeks and Ms. Henden "effectively dodged their collective and/or respective responsibilities with regard to a reasonable accommodation for plaintiff's disability and his right to redress for the

4

dissemination of protected health information." (*Id.* at 48)

Plaintiff reports he met with Ms. Anderson again a week later, at which time Plaintiff was informed that James Suver, a supervisor, had determined the release of Plaintiff's information "was made in the normal course of business," and there was not a violation. (Doc. 6 at 49) During a third and fourth meeting with Ms. Anderson, Plaintiff requested to meet with Mr. Suver, and these requests were denied. (*Id.* at 50)

According to Plaintiff, defendants James Suver and Dana Lyons "knowingly fail[ed] to properly supervise and adequately train their employees in the basic fundamentals of privacy rules, billing procedures and compliance with the California confidentiality of medical information Act." (Doc. 6 at 37) Thus, Plaintiff contends Mr. Suver and Ms. Lyons "subjected Plaintiff to… unnecessary and wanton infliction of emotional pain and financial harm." (*Id.*)

## IV. Discussion and Analysis

Based upon the foregoing facts, Plaintiff identifies the following causes of action in his First Amended Complaint: (1) negligence; (2) wrongful disclosure of protected health information in violation of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-6; (3) wrongful disclosure of individually identifiable health information in violation of 42 U.S.C. § 1320d-6; (4) violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56-56.37; (5) conspiracy in violation of 42 U.S.C. § 1985(3); (6) violation of his rights to equal treatment under the Fourteenth Amendment; (7) violation of the Constitution of the State of California, Article 1, § 1; (8) violation of Cal. Health & Safety Code §1280.15; and (10) violation of Cal. Civ. Code §§ 56 and 56.37. (*See* Doc. 6 at 1)

### A. HIPAA Violations

Plaintiff contends defendants Janice Kern, Ridgecrest Hospital, James Suver, and Dana Lyons are liable for violating the Health Insurance Portability and Accountability Act ("HIPAA") through the unlawful and wrongful disclosure of Plaintiff's health information. (Doc. 6 at 1, *see also* 13-16, 22-32)

The purpose of HIPAA is "to improve the … efficiency and effectiveness of the health information system through the establishment of standards and requirements for the electronic transmission of certain health information." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078,

1083 (9th Cir. 2007) (quoting HIPAA § 261, Pub. L. 104-191, 110 Stat. 1936 (codified at 42 U.S.C. § 1320d notes)) In doing so, HIPAA "authorizes the Secretary of Health and Human Services to 'adopt standards' that will 'enable health information to be exchanged electronically, . . . consistent with the goals of improving the operation of the health care system and reducing administrative costs.'" *Id.* (citing 42 U.S.C. § 1320d-2). In addition, the standards are intended to "ensure the integrity and confidentiality of individuals' health information and protect against . . . unauthorized uses or disclosures of the information." *Id.*

Significantly, as the Court previously informed Plaintiff, there is no "private right of action to enforce HIPAA" when an individual believes that a disclosure was wrongfully made. (*See* Doc. 5 at 6, quoting *Webb,* 499 F.3d at 1082) Because the statute does not provide a private right of action, and "does not provide a remedy in court for those persons who believe their [HIPAA] rights have been violated," Plaintiff is unable to state a cognizable claim for a HIPAA violation. *See Jackson v. Cnty. of Sacramento HHS,* 2017 U.S. Dist. LEXIS 58470 (E.D. Cal. Apr. 13. 2017). Consequently, the Court recommends that his claims for HIPAA violations be **DISMISSED** without leave to amend.

**B.  Violation of the Fourteenth Amendment**

Plaintiff contends the defendants are liable for violations of his right to equal treatment under the Fourteenth Amendment. (Doc. 6 at 1, 61-65) Such claims may be brought pursuant to 42 U.S.C. § 1983, which is "a method for vindicating federal rights elsewhere conferred" and does not provide substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

Importantly, "private parties are not generally acting under color of state law." *Price v. Hawaii*,

939 F.2d 702, 707-09 (9th Cir. 1991); *see also Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."). Consequently, the Ninth Circuit explained that "[w]hen addressing whether a private party acted under color of law, we . . . start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Medical Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). The Supreme Court has identified four tests to determine whether a private individual's actions implicate state action: (1) the public function test, (2) the joint action test, (3) the state compulsion test, and (4) the governmental nexus test. *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997).

### 1. The public function test

The public function test inquires whether the private actor performs a public function that is "traditionally the exclusive prerogative of the state." *Parks School of Bus., Inc. v Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995). Notably, "the provision of medical services is a function traditionally performed by private individuals." *West*, 487 U.S. at 57 n.15; *see also Jackson v. East Bay Hospital*, 980 F. Supp. 1341, 1357 (N.D. Cal. 1997) (for purposes of Section 1983, a hospital was not a state actor even though it received state or federal funding and was subject to governmental regulation). Further, there are no factual allegations that support a conclusion that the defendants had, in essence, "become the government" to satisfy the public function test. *See Lee v. Katz*, 276 F.3d 550, 555 n.5 (9th Cir. 2002)

### 2. The joint action test

The Supreme Court explained, "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Lugar v. Edmonson Oil Co.*, 456 U.S. 922, 941 (1982) (citation omitted). The test examines whether a state has "'so far insinuated itself into a position of interdependence with the private actor that it must be recognized as a joint participant in the challenged activity." *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 607 (9th Cir. 1989) (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961)). Even an allegation that the defendants contracted with the government is insufficient to satisfy the

joint action test. *See Ledet v. Cal. Waste Solutions, Inc.*, 2013 U.S. Dist. LEXIS 37214 at * 11 (N.D. Cal. Mar. 18, 2013) (finding the plaintiff failed to satisfy the joint action test where the only connection to the government were contracts between municipalities and the waste collection company). Plaintiff has not alleged facts demonstrating the defendants satisfy this test.

### 3. The state compulsion test

State action may be demonstrated where a state "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State." *Johnson*, 113 F.3d at 1119 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Plaintiff has not alleged any state laws compelled the defendants to take the actions Plaintiff alleges harmed him. Accordingly, Plaintiff's allegations are insufficient to satisfy this test.

### 4. The nexus test

The governmental nexus test inquires whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State of itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). Generally, the test requires evidence that the private actor is "entwined with governmental policies, or . . . [the] government is entwined in [the private actor's] management or control." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 296 (2001). The Ninth Circuit has identified factors for the Court's consideration to determine whether there is a sufficiently close nexus including: "(1) the organization is mostly state institutions; (2) state officials dominate decision making of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor." *Villegas v. Gilroy Garlic Festival Assoc.*, 541 F.3d 950, 955 (9th Cir. 2008).

Plaintiff does not include any factual allegations in his complaint addressing the factors identified by the Ninth Circuit. Consequently, the Court is unable to conclude there is a significantly close nexus between the defendants and a state government to satisfy this test.

### 5. Conclusion

Plaintiff fails to allege any facts supporting the conclusion that any of the four tests identified by the Supreme Court are satisfied or that official state action is implicated. Accordingly, the claim for a

violation of Plaintiff's Fourteenth Amendment rights under Section 1983 is not cognizable, and the Court recommends this claim be **DISMISSED**.

### C. Conspiracy under 42 U.S.C. § 1985(3)

Plaintiff contends defendants Kristen Hendon, Stephanie Meeks, James Suver, Dana Lyons, and Ridgecrest Regional Hospital are liable for conspiring to interfere with his civil rights under 42 U.S.C. § 1985(3). (Doc. 6 at 1, 38-61)

"To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).

As an initial matter, a plaintiff seeking to state a Section 1985 claim "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). Thus, a plaintiff must allege "the existence of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (citations omitted). A conspiracy may be alleged when a plaintiff states "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights." *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997). Plaintiff fails to state how the defendants conspired and, as discussed above, fails to set facts sufficient to support a conclusion that he suffered a violation of his constitutional rights.

Moreover, to state a claim under Section 1985(3), the facts alleged must also "demonstrate a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002). Plaintiff asserts that he is disabled within the meaning of the ADA, and the discrimination against him was based upon his disability. (*See* Doc. 6 at 57). However, courts have repeatedly held that disabled individuals do not constitute a "class" within the meaning of section 1985(3). *See, e.g., D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1486-87 (7th Cir. 1985) ("The legislative

history of Section 1985(3) does not suggest a concern for the handicapped"); *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176-77 (10th Cir. 1983) ("even if there could be here developed by further pleading a class of handicapped persons with sufficient conditions or factors in common derived from their *physical* condition to be ascertainable or identifiable, it could not come within the province of 42 U.S.C. § 1985(3)"); *see also Story v. Green*, 978 F.2d 60, 64 (2d Cir. 1992) ("We note in passing that most authorities have not considered disability to be a suspect or quasi-suspect classification"); *Trautz v. Weisman*, 819 F.Supp. 282, 292 (S.D.N.Y. 1993) ("[o]ther courts have explicitly held that disabled individuals do not constitute a 'class within the meaning of § 1985(3)"). Thus, Plaintiff fails to allege facts sufficient to support the conclusion that he is a member of a class protected by Section 1985(3). Consequently, the Court recommends the claim for a violation of Section 1985(3) be **DISMISSED**.

### D. Supplemental Jurisdiction

The remaining causes of action in Plaintiff's First Amended Complaint arise under state law, including: negligence[2]; a violation of the Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56-56.37; a violation of the Constitution of the State of California, Article 1, § 1; a violation of Cal. Health & Safety Code §1280.15; and violation of Cal. Civ. Code §§ 56 and 56.37. (*See* Doc. 6 at 1)

Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." Significantly, the Ninth Circuit determined that "[w]hen federal claims are dismissed before trial . . . pendant state claims also should be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) (internal quotation marks omitted); *see also Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) (recognizing the propriety of dismissing

---

[2] Plaintiff seeks to assert a claim for negligence based upon standards of cares set forth in the Health Insurance Portability and Accountability Act ("HIPAA"), Title II of the Americans with Disabilities Act, and several provisions of California law. (Doc. 6 at 16-17, 22)
Under California law, the doctrine of negligence per se provides that "statutes may be admitted to establish a standard or duty of care in negligence actions." *Elsner v. Uveges*, 34 Cal.4th 915, 923 (2004). However, the invocation of a statutory duty does not create a cause of action separate from common law negligence. *See Waldo v. Eli Lilly & Co.*, 2013 WL 5554623 (E.D. Cal. Oct. 7, 2013). Thus, even where a plaintiff identifies a federal standard of care – such as HIPAA – part of a negligence claim, it does not create federal question jurisdiction or federal cause of action. *See Wander v. Kaus*, 304 F. 3d 856 (9th Cir. 2002) (holding "[f]ederal-question jurisdiction over a state-law claim is not created just because a violation of federal law is an element of the state law claim"); *see also Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007) ("[t]hat some standards of care used in tort litigation come from federal law does not make the tort claim as on 'arising under' federal law"); *Jairath v. Dyer*, 154 F. 3d 1280, 1284 (11th Cir. 1998) (a violation of ADA as an element of a state law cause of action does not confer federal-question jurisdiction). Accordingly, Plaintiff's claim for negligence, to the extent it is based upon duties arising under HIPAA and the ADA, does not invoke federal jurisdiction.

supplemental state law claims without prejudice when the district court has dismissed the federal claims over which it had original jurisdiction).

At this juncture—because Plaintiff again failed to state a cognizable claim under federal law—the Court will not expend limited judicial resources analyzing the merits of his state law claims. Accordingly, the Court recommends that supplemental jurisdiction be declined and Plaintiff's claims arising under state law be **DISMISSED** without prejudice.

## **V.     Findings and Recommendations**

The Court previously granted Plaintiff leave to amend the complaint, informing him of the legal and factual deficiencies of the pleading.  However, Plaintiff has failed to cure the defects, and the claims arising under federal law fail.  The Court finds further leave to amend the complaint would be futile. *See Lopez*, 203 F.3d at 1130; *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's First Amended Complaint be **DISMISSED** without prejudice; and
2. The Clerk of Court be DIRECTED to close the action.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:     **May 7, 2018**                              **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE