# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC EMMERICK, ) | Case No.: 1:17-cv-1160- AWI - JLT |
| Plaintiff, ) ) | ORDER WITHDRAWING THE FINDINGS AND RECOMMENDATIONS AND DISMISSING THE |
| v. ) ) | SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND |
| RIDGECREST REGIONAL HOSPITAL, et al., ) ) | |
| Defendants. ) ) | |

Marc Emmerick seeks to proceed *pro se* in this action against Ridgecrest Regional Hospital, its CEO, the Chairperson of the Board of Directors, the Safety and Regulatory Compliance Manager, a patient advocate, and a pay agent. (*See* Doc. 6) According to Plaintiff, the defendants are liable for violations of federal and state law due to the disclosure of medical records without Plaintiff's permission. Because Plaintiff fails to allege facts sufficient to support his federal claims, the Second Amended Complaint is **DISMISSED** with leave to amend.

**I.      Screening Requirement**

When an individual seeks to proceed *in forma pauperis*, the Court is required to review the complaint and shall dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2). A plaintiff's claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether

or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In other words, a complaint is frivolous where the litigant sets "not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court must review Plaintiff's Second Amended Complaint because it supersedes the previously filed complaints.[1] *See Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

## II. Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to inform the defendant of the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citations omitted). Vague and conclusory allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a

---

[1] Previously, the Court recommended dismissal of the First Amended Complaint without prejudice. (Doc. 7) Upon reviewing Plaintiff's objections, the Court directed Plaintiff to file his proposed Second Amended Complaint. (Doc. 11) Accordingly, the findings and recommendations related to the First Amended Complaint are **WITHDRAWN**.

complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 679 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions are not entitled to the same assumption of truth. *Id.* The Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III. Allegations[2]

Plaintiff asserts that he has "physical and mental impairments that substantially limit[] one or more of his major life activities" and is disabled within the meaning of the Americans with Disabilities Act. (Doc. 12 at 2, ¶ 4) He alleges the "physical disability limits his movement in his arms, shoulders and hips." (*Id.* at 3, ¶ 13) In addition, he contends the "mental disability manifests itself in obvious ways, such as a speech impediment, deficits in information processing speed and memory, and not reacting with the expected emotional responses to situations." (*Id.*) However, Plaintiff explains his "intellectual capacity to converse and comprehend complex issues" is not "fully" impaired. (*Id.*)

Plaintiff reported that he was injured "in a slip and fall accident" while a customer at the Ridgecrest California Home Depot store" in October 2013. (Doc. 6 at 38, ¶ 73) Plaintiff sought treatment at Ridgecrest Regional Hospital for this injury. (*Id.*)

In March or April of 2015, Ridgecrest Regional Hospital assigned an "unlicensed contracted social worker named Shirley Hartman to assist [P]laintiff with various issues based upon his disability." (Doc. 6 at 38, ¶ 74) Plaintiff alleged Ms. Hartman violated Plaintiff's privacy "by discussing his information with others at Ridgecrest Regional Hospital." (*Id.* at 38, ¶ 75) He asserted Ms. Hartman also reported Plaintiff "to the County Adult Protective Services as an endangered person," which he believed was done in retaliation for his "chastisement over the breach of trust and confidence." (*Id.* at 39)

Plaintiff alleges that in August 2015, he discussed the fact that he was engaged in negotiations

---

[2] Although the Second Amended Complaint (Doc. 12) supersedes the original Complaint (Doc. 1), some facts were omitted by Plaintiff in the amended pleading. To the extent necessary, the Court also refers to the original complaint to get a complete picture of the events identified by Plaintiff.

3

with Home Depot with Janice Kern, a "pay agent" at Ridgecrest Hospital. (Doc. 6 at 23) Plaintiff asserts Ms. Kern "asked Plaintiff if he would like her to send an invoice [to Home Depot] to see if they would pay the hospital so that she could 'clear the books.'" (*Id.*)

He alleges that on August 28, 2015, "Ms. Kern sent a facsimile from Ridgecrest Regional Hospital to an open facsimile machine at Home Depot, a non-covered entity." (Doc. 6 at 10) Plaintiff asserts "the facsimile contained complete treatment notes providing personal information beyond the minimum necessary required for billing purposes." (*Id.* at 18) Plaintiff contends Ms. Kern "did not have Plaintiff's authorization to send any health information to The Home Depot Inc." (*Id.* at 17) He asserts that authorization was only for a billing invoice to be sent, and "[n]o reference to Health records or any treatment sheets were made." (*Id.*) Further, he alleges the facsimile "was openly available and viewed by … The Home Depot Inc. personnel." (*Id.* at 18)

According to Plaintiff, the facsimile sent by Ms. Kern contained information that was "highly sensitive, deeply personally hurtful and erroneous." (Doc. 6 at 19) He contends, "It was also harmful because Plaintiff and The Home Depot Inc. to whom the information was disseminated were negotiating … their financial responsibility for Plaintiffs injury." (*Id.*) He asserts the receipt of the information "lead to The Home Depot Inc.'s decision to discontinue negotiations" and the "payment of [an] overdue Emergency Room debt." (*Id.* at 20) Plaintiff alleges the inclusion of his treatment sheets by Ms. Kern "was a deliberate malicious effort with the 'Specific Intent' to derail [the] negotiations." (*Id.* at 23) Further, Plaintiff asserts that Ridgecrest Regional Hospital then "placed the debt into collections," which has damaged his credit. (*Id.* at 31-32)

Plaintiff asserts he visited the billing office again on September 1, 2015, and spoke to Ms. Kern. (Doc. 6 at 42) Plaintiff reports Ms. Kern informed him "of a second visit bill for [his] injury that also had not been paid." (*Id.*) According to Plaintiff, Ms. Kern "then sent another unauthorized facsimile to The Home Depot Inc. for payment." (*Id.*) Plaintiff alleges he "attempted to discuss the breach with Janice Kern and found her unreceptive," though Ms. Kern gave Plaintiff the phone number for Kristen Hendon, a patient advocate. (*Id.*) He reports he "began leaving messages" for Ms. Hendon the same day, but "[n]o one returned his calls." (*Id.*)

He alleges that on September 5, 2015, he received a certified letter from Stephanie Meeks,

Ridgecrest Regional Hospital's Privacy Officer. (Doc. 6 at 42) Plaintiff asserts, "The letter was in reference to another matter" (Doc. 1 at 15), but Ms. Meeks "included an assurance that Ridgecrest Regional Hospital had policies and procedures to protect his Privacy." (Doc. 6 at 43) He reports that Ms. Meeks included "a telephone number where Plaintiff could leave a message if he had any questions," which Plaintiff called and "left detailed messages," but "his messages were not returned." (*Id.*; Doc. 1 at 15)

Plaintiff reports he went to the hospital several times throughout September 2015, attempting to speak to Ms. Meeks or Ms. Hendon. (Doc. 1 at 15) He asserts the attempts were "unsuccessful," and the hospital staff "could or would not assist him in locating Defendant Kristen Hendon or Defendant Stephanie Meeks." (Doc. 1 at 15; Doc. 12 at 8) However, Plaintiff also alleged that after he received the letter, "Kristen Hendon and Plaintiff had a brief telephone conversation regarding Shirley Hartman's releases of plaintiff's private information, plaintiff's issues and his efforts to lodge a complaint regarding Shirley Hartman's release of his information, that the information resulted in the certified letter declaring that Shirley was required to disclose his information, and that medical providers were mandatory reports of observances of abuse." (Doc. 6 at 43, ¶ 84)

In October 2015, Plaintiff hand-delivered "a litigation hold outlining what should be done to preserve any possible evidence should there be a lawsuit." (Doc. 6 at 47) Previously, Plaintiff alleged that a few days after this delivery, Plaintiff met with Amy Henderson, Manager of the Health Information Management at the hospital, who "explained that Stephanie Meeks and Kristin Hendon had been in the process of exchanging jobs. (*Id.* at 47) Ms. Henderson told Plaintiff this job exchange "caus[ed] many delays and … plaintiff had simply fallen through the cracks." (*Id.* at 47-48) He now asserts that Ms. Henderson told Plaintiff that Meeks and Hendon had expected Plaintiff "to let it all go because he would never find an attorney to take [his case] due to Plaintiff's disability and capacity and due to the cost of pursuing a legal remedy." (Doc. 12 at 10, ¶ 57) (internal quotation marks omitted)

Plaintiff reports he met with Ms. Henderson again a week later, at which time Plaintiff was informed that James Suver, a supervisor, had determined the release of Plaintiff's information "was made in the normal course of business" and there was not a violation. (Doc. 6 at 49) During a third and fourth meeting with Ms. Henderson, Plaintiff requested to meet with Mr. Suver, and these requests

were denied. (*Id.* at 50)

According to Plaintiff, Ms. Meeks and Ms. Hendon "each refused to provide him patient advocate services or provide him services to redress violation of his privacy rights." (Doc. 12 at 4, ¶22) In particular, "Plaintiff contends that Defendants Meeks and Hendon failed to establish effective communication with or respond to Plaintiff's many requests for service and that [his] concerns were negligently overlooked." (*Id.* at 5, ¶ 29) Plaintiff also alleges he requested "access to [a] complaint mechanism to seek redress for the sexually discriminate and retributive acts of RRH employees who called him 'silly boy' and other employees who implied Plaintiff was a physical threat because he was a man with a disability." (*Id.* at 4 ¶ 23) Plaintiff asserts the denial of access to a grievance or complaint process was a violation of the ADA.[3] (*Id.*, ¶ 25) In addition, he alleges the defendants "purposefully denied him access to the Patient advocate and the Compliance Officer and/or accommodations for redress of his complaint in violation of the ADA." (*Id.* at 5, ¶ 26)

Plaintiff alleges he met with Dana Sharell Lyons on December 3, 2015, at which time he "expressed his concern regarding the subversion of RRH's Compliance policy and protocols regarding the handling of privacy and discrimination violations." (Doc. 12 at 9, ¶ 48) He also "expressed to Ms. Lyons that he felt these had been discriminatory acts based on his disability and in retaliation for his efforts to address his maltreatment." (*Id.*) Plaintiff asserts Ms. Lyon stated, "They figured you'd just give up." (*Id.*) In addition, Plaintiff alleges he "was informed that his complaints were discounted due to Plaintiff's disability, financial situation and perceived incapacity." (*Id.*, ¶ 50)

### IV. Discussion and Analysis

Based upon the foregoing facts, Plaintiff identifies the following causes of action in his Second Amended Complaint: (1) violation of the Americans with Disabilities Act; (2) violation of the Unruh Civil Rights Act, Cal. Civ. Code §§51-53; (3) negligence; (4) violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56-56.37; (5) violation of Cal. Health & Safety Code §1280.15; (6) violation of the Constitution of the State of California, Article 1, § 1; and (7) violation of Cal. Health & Safety Code §130200. (*See* Doc. 12 at 1)

---

[3] On the other hand, Plaintiff also alleges that he was provided "two avenues to redress his complaints, one of which is personal appearance at the place of business and the other through two telephone numbers." (Doc. 12 at 6, ¶ 37)

6

**A.     Americans with Disabilities Act ("ADA")**

Title III of the ADA prohibits discrimination by public accommodations, and provides in relevant part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Thus, the Ninth Circuit determined: "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). A plaintiff need not show intentional discrimination to make out an ADA violation. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

### 1.     Place of public accommodation

Under Title III, "professional offices of a health care provider, hospital, or other service establishment" are considered public accommodation. Specifically, Title III provides: "[t]he following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—. . . a professional office of a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7)(F). Thus, Ridgecrest Regional Hospital is a place of public accommodation.

### 2.     Whether the individual defendants owned, leased or operated the hospital

Plaintiff identifies several individuals as defendants in the action: James Suver, CEO; Dana Sharell Lyons, Board of Directors Chairperson; Stephanie Meeks, Safety and Regulatory Compliance Manager; Kristen Hendon, patient advocate; and Janice Kern, personal pay agent. (*See* Doc. 12 at 1; Doc. 6 at 2, 8 [identifying the titles of each defendant]). Thus, the Court must determine whether these individuals may be held liable under Title III of the ADA.

The Ninth Circuit defined the term "to operate" for purposes of Title III of the ADA as "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage." *Lentini*, 370 F.3d at 849. Because Title III seeks to limit accountability to "those in a position to ensure

nondiscrimination," a relevant inquiry is "whether the individual had the power to facilitate any necessary accommodation." *Id.* (quotation marks and citations omitted). Thus, an employee in a position to make and direct employees to implement policy decisions could be liable under Title III of the ADA. *Lentini*, 370 F.3d at 849. In contrast, employees who merely implement company-wide policies cannot be personally liable under Title III of the ADA. *See Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1335 (N.D. Cal. 1994) (dismissing Title III ADA claim against a defendant physician because he was "not on the hospital's board of directors, and he [had] no power to enact or amend hospital policy"); *Butler v. WinCo Foods*, *LLC*, 2013 WL 12076010, at *3 (C.D. Cal. Mar. 11, 2013) (finding a store manager who implemented a company-wide policy did not "operate" a place of public accommodation under Title III of the ADA).

Plaintiff alleges that "Defendant Suver and Defendant Lyons had the authority and an obligation to assure that a proper Corporate Compliance Plan is in place for handling compliance matters, including issues related to persons of disabilities such as Plaintiff." (Doc. 12 at 9, ¶ 52) As the CEO of the hospital and the chairperson of the board of directors (*see* Doc. 6 at 2-3), it would appear that Mr. Suver and Ms. Lyons had the authority to make and direct employees to implement policy decisions for the hospital. *See Aikins*, 843 F. Supp. at 1335.

On the other hand, Plaintiff fails to allege facts sufficient to support a conclusion that Ms. Hendon and Ms. Kern, as a patient advocate and personal pay agent, have sufficient authority to be deemed an "operator" of the hospital under the meaning of Title III. Likewise, there are no facts that Ms. Meeks, though the alleged "Safety and Regulatory Compliance Manager," had the authority to do more than direct compliance with the hospital policy. Accordingly, Plaintiff fails to allege facts sufficient to for the Court to conclude that Stephanie Meeks, Kristen Hendon, and Janice Kern may be held liable under Title III.

### 3. Plaintiff's requested accommodation

Plaintiff fails to clearly identify what accommodation he believed he should have received at the hospital. In addition, he offers conflicting information regarding the access he had to the services offered at the hospital. For example, though Plaintiff alleges that he was denied access to a patient advocate, he previously alleged that he received the telephone number for Ms. Hendon, the patient

8

advocate, and they had a telephone conversation during which they discussed the release of his private information and "his efforts to lodge a complaint." (*See* Doc. 6 at 43, ¶ 84) Plaintiff also contends that Ms. Meeks and Ms. Hendon "failed to establish effective communication with or respond to Plaintiff's many requests for service." (Doc. 12 at 5, ¶29) However, he fails to allege how the communication by mail from Ms. Meeks and by telephone with Ms. Hendon was not effective. Likewise, there are no facts supporting a conclusion that accommodations to *not* communicate by mail or telephone were necessary because of Plaintiff's disabilities. Rather, it appears that plaintiff was merely dissatisfied with the result of these communications.

The Ninth Circuit explained that "a place of public accommodation need not make a reasonable modification unless it is necessary to provide an individual with a disability full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations." *Murphy v. Bowl,* 150 Fed. App'x 661, 663 (9th Cir. Oct. 5, 2005). The facts alleged both in the Second Amended Complaint and the prior pleadings strongly suggest that Plaintiff received the requested services from the hospital, including access to a patient advocate (whose telephone number was given to Plaintiff, and with whom he had a conversation regarding his concerns) and fora within which to address his grievances and complaints (including conversations with the patient advocate and the chairperson of the board of directors). He fails to allege facts to support that any accommodation was required under Title III for additional services beyond those provided by the hospital and its staff. Thus, the facts alleged are not sufficient to support a claim for a violation of Title III, and this claim is **DISMISSED** with leave to amend.

### 4. Relief or remedy requested

Finally, the Court notes Plaintiff fails to clearly identify the remedy or relief requested based upon the alleged violation of Title III. This section provides injunctive relief against private entities that discriminate against the disabled. 42 U.S.C. § 12182(a); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001). To the extent Plaintiff seeks monetary damages, such damages are not recoverable under Title III of the ADA. *See* § 12188(a)(1); *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).

## B. Supplemental Jurisdiction

The remaining causes of action in Plaintiff's Second Amended Complaint arise under state law.

(*See* Doc. 12 at 1) Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." Significantly, the Ninth Circuit determined that "[w]hen federal claims are dismissed before trial . . . pendant state claims also should be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) (internal quotation marks omitted); *see also Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) (recognizing the propriety of dismissing supplemental state law claims without prejudice when the district court has dismissed the federal claims over which it had original jurisdiction).

At this juncture—because Plaintiff again has failed to state a cognizable claim under federal law—the Court declines to expend judicial resources analyzing the merits of his state law claims. Supplemental jurisdiction is declined over the state law claims, and they are likewise dismissed without prejudice.

**V.     Conclusion and Order**

Plaintiff fails to state a cognizable claim under federal law, thereby invoking this Court's jurisdiction. However, it is not clear whether the factual deficiencies may be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987); *see also Lopez*, 203 F.3d at 1128 (dismissal of a *pro se* complaint without leave to amend for failure to state a claim is proper only where it is obvious that an opportunity to amend would be futile). Therefore, Plaintiff will be given **one final** opportunity to file an amended complaint that states sufficient facts to support a claim arising under federal law. The amended complaint must bear the docket number assigned this case and must be entitled "Third Amended Complaint."

Plaintiff is again advised that an amended complaint supersedes the original complaint. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). In addition, the amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. The amended complaint must bear the docket number assigned this case and must be labeled "Third Amended Complaint." Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an

amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986) (citing *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981). Based upon the foregoing, the Court **ORDERS**:

1. The Findings and Recommendations addressing Plaintiff's First Amended Complaint (Doc. 7) are **WITHDRAWN**;
2. Plaintiff's Second Amended Complaint is **DISMISSED** with leave to amend; and
3. Within thirty days from the date of service of this order, Plaintiff **SHALL** file a Third Amended Complaint.

**If Plaintiff fails to comply with this order to file a Third Amended Complaint, the action may be dismissed for failure to prosecute and failure to obey the Court's order**.

IT IS SO ORDERED.

Dated: **January 24, 2019**  **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE