# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC EMMERICK, | Case No.: 1:17-cv-1160- AWI - JLT |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS DISMISSING THE THIRD AMENDED COMPLAINT WITHOUT LEAVE TO AMEND |
| v. | |
| RIDGECREST REGIONAL HOSPITAL, et al., | |
| Defendants. | |

    Marc Emmerick seeks to proceed in this action against Ridgecrest Regional Hospital, its CEO, the Chairperson of the Board of Directors, the Safety and Regulatory Compliance Manager, a patient advocate, and a pay agent. According to Plaintiff, the defendants are liable for violations of federal and state law due to the disclosure of medical records without Plaintiff's permission. Because Plaintiff fails to allege facts sufficient to support his federal claims, the Court recommends the Third Amended Complaint be **DISMISSED** without leave to amend.

**I.    Screening Requirement**

    When an individual seeks to proceed *in forma pauperis*, the Court is required to review the complaint and shall dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2). A plaintiff's claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether

1

or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In other words, a complaint is frivolous where the litigant sets "not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court must review Plaintiff's Third Amended Complaint because it supersedes the previously filed complaints. *See Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

**II.    Pleading Standards**

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to inform the defendant of the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citations omitted). Vague and conclusory allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 556 U.S. at 679 (citations omitted). When factual allegations are well-pled, a court should

2

assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions are not entitled to the same assumption of truth. *Id.* The Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III. Allegations[1]

Plaintiff asserts that he has "physical and mental impairments that substantially limit[] one or more of his major life activities" and is disabled within the meaning of the Americans with Disabilities Act. (Doc. 14 at 2, ¶ 4) He alleges the physical disability limits his movement in his arms, shoulders, back, hips, and legs. (*Id.* at 4, ¶ 14) In addition, he contends the "mental disabilities manifest in obvious ways, such as a speech impediment, impaired memory for verbal material and as a sporadic loss of word meaning." (*Id.*) However, Plaintiff explains his "intellectual capacity… [to] converse… and comprehend complex issues" is not "fully" impaired. (*Id.*)

Plaintiff reported that he was injured "in a slip and fall accident" while a customer at the Ridgecrest California Home Depot store" in October 2013. (Doc. 6 at 38, ¶ 73; *see also* Doc. 14 at 51) Plaintiff sought treatment at Ridgecrest Regional Hospital for this injury. (*Id.*)

In March or April of 2015, Ridgecrest Regional Hospital assigned an "unlicensed social worker" named Shirley Hartman, "to assist Plaintiff with various issues that he found to be overwhelming or difficult due to his disability." (Doc. 14 at 5, ¶ 20) Plaintiff alleged Ms. Hartman violated Plaintiff's privacy "by discussing his information with others" at Ridgecrest Regional Hospital. (*Id.* at 5-6, ¶ 22) He asserted Ms. Hartman also reported Plaintiff "to the Kern County Adult Protective Services as an endangered person," which he believed was done in retaliation for his "chastisement over the breach of trust and confidence." (Doc. 14 at 5, ¶ 25; Doc. 6 at 39)

Plaintiff alleges that in August 2015, he discussed the fact that he was engaged in negotiations with Home Depot with Janice Kern, a "pay agent" at Ridgecrest Hospital. (Doc. 14 at 9, ¶ 41) Plaintiff asserts Ms. Kern "asked Plaintiff if he would like her to send an invoice to The Home Depot to see if they would pay the hospital so that she could 'clear the books.'" (*Id.*)

---

[1] Although the Third Amended Complaint (Doc. 14) supersedes the original Complaint (Doc. 1) and First Amended Complaint, some facts were omitted by Plaintiff in the amended pleading. To the extent necessary, the Court also refers to the prior pleadings to get a complete picture of the events identified by Plaintiff.

He alleges that on August 28, 2015, Ms. Kern sent a facsimile "from Ridgecrest Regional Hospital Billing office to an open facsimile machine at The Home Depot, a non-covered entity." (Doc. 14 at 9, ¶ 42) Plaintiff asserts the document faxed contained complete treatment notes with "Protected Health Information … and personal information that was beyond the minimum necessary required for billing purposes." (*Id.* at 10, ¶ 42) Plaintiff contends Ms. Kern "did not have [his] authorization to send any health information to The Home Depot Inc." (*Id.*, ¶ 43) He asserts that "his vocal authorization was only for a billing invoice to be sent, and … no reference to Health records or any treatment sheets were made." (*Id.*) Further, he alleges the facsimile "was openly available to be viewed by any number of people that were not authorized to receive or review his Protected Health Information." (*Id.*)

According to Plaintiff, the facsimile sent by Ms. Kern contained information that was "highly sensitive, deeply personally hurtful and erroneous." (Doc. 14 at 10, ¶ 44) He contends the release "was also harmful because Plaintiff and The Home Depot Inc. to whom the information was disseminated had been negotiating their financial responsibility for Plaintiff's hip injury." (*Id.* at 11, ¶ 45) He asserts the receipt of the information "lead to The Home Depot Inc.'s decision to discontinue negotiations." (*Id.*, ¶ 46) Plaintiff alleges the inclusion of his treatment sheets by Ms. Kern "was a deliberate malicious effort with the 'Specific Intent' to derail [the] negotiations, made as retribution for his assertions of mistreatment by Shirley Hartman and out of spite to prevent Plaintiff from receiving any settlement." (*Id.*, ¶ 47) Further, Plaintiff asserts that Ridgecrest Regional Hospital "then placed the Emergency Room debt into collections which has damaged his credit." (*Id.*, ¶ 47)

Plaintiff asserts he visited the billing office again on September 1, 2015, and spoke to Ms. Kern. (Doc. 14 at 11, ¶ 48) Plaintiff reports Ms. Kern informed him "of a second visit bill for [his] injury that also had not been paid." (*Id.*) According to Plaintiff, Ms. Kern "then sent another facsimile to The Home Depot Inc. for payment." (*Id.*) Plaintiff alleges he attempted to discuss the breach with Ms. Kern and he "asked that she rescind the facsimile," to which Ms. Kern reacted in a "hostile and non-receptive manner." (*Id.*) However, Ms. Kern referred Plaintiff to Kristen Hendon, a patient advocate, and provided her phone number. (*Id.*) He reports he "began leaving messages" for Ms. Hendon the same day, but "[n]o one returned his calls." (*Id.* at 11-12, ¶ 49)

He alleges that on September 5, 2015, he received a certified letter from Stephanie Meeks, Ridgecrest Regional Hospital's Privacy Officer. (Doc. 14 at 12, ¶ 52; *see also id.* at 73) Ms. Meeks wrote to Plaintiff regarding his "concern that [he] felt [his] privacy was violated due to a report that was made" by Ridgecrest Regional Hospital. (*Id.* at 73) Ms. Meeks informed Plaintiff that "medical providers are mandated to report any possible observances of abuse… to the proper agencies." (*Id.*) She also indicated the hospital was committed to protecting Plaintiff's personal information, and including a telephone number for Plaintiff to contact her if he had questions. (*Id.*) Plaintiff asserts "he left detailed messages at this number," but "his messages and requests for assistance in filing his complaints were not returned." (*Id.* at 13, ¶ 54)

Plaintiff reports he went to the hospital "several times throughout September 2015, attempting to speak to Meeks or Hendon." (Doc. 14 at 14, ¶ 59) He asserts "the[] attempts were unsuccessful," and "the hospital staff … could [not] or would not assist him in locating Kristen Hendon or Stephanie Meeks." (*Id.*)

In October 2015, Plaintiff hand-delivered "a litigation hold outlining what should be done to preserve any possible evidence should there be a lawsuit." (Doc. 14 at 16, ¶ 63) A few days after this delivery, Plaintiff met with Amy Henderson, Manager of the Health Information Management at the hospital, who explained she was assigned to his "case." (*Id.*) Plaintiff reports he met with Ms. Henderson the same month, at which time she explained "Stephanie Meeks and Kristin Hendon had been in the process of exchanging jobs throughout the relevant period." (*Id.*, ¶ 64) Ms. Henderson told Plaintiff this job exchange "caus[ed] many delays and … plaintiff had simply fallen through the cracks." (*Id.*) He now asserts that Ms. Henderson also told Plaintiff there was "the possibility that Meeks and Hendon had expected Plaintiff 'to let it all go because he would never find an attorney to take [his case] due to Plaintiff's disability and capacity (assuming mental capacity), and due to the cost of pursuing a legal remedy.'" (*Id.*)

Plaintiff reports he met with Ms. Henderson again a week later, at which time Plaintiff was informed that James Suver, a supervisor, had determined the release of Plaintiff's information "was made in the normal course of business" and there was not a violation. (Doc. 14 at 16-17, ¶ 65) During a third and fourth meeting with Ms. Henderson, Plaintiff requested to meet with Mr. Suver, and these

requests were denied. (*Id.* at 17, ¶ 66)

According to Plaintiff, "Meeks and Hendon each refused to provide patient advocate services or to provide him services to facilitate the filing of the required written complaint to redress this new perceived violation by Janice Kern of his Health information privacy rights." (Doc. 14 at 14, ¶ 60) Plaintiff contends that Ms. Meeks and Ms. Hendon "failed to establish effective communication with or respond to Plaintiff's many requests for service and for access to RRH's Process as required to file complaints." (*Id.* at 18, ¶ 68) Instead, Plaintiff contends his "concerns were "negligently discounted." (*Id.* at 18, ¶ 68)

Plaintiff also alleges that "he requested access to [the hospital's] complaint mechanism to seek redress for the discriminate and retributive acts" of Ms. Kern calling him "Silly Boy" and Ms. Hartman implying "Plaintiff was a physical threat because he was a man with a disability." (*Id.* at 18, ¶ 69) Plaintiff asserts the denial of access to a grievance or complaint process was "a discriminate act violation of the ADA."[2] (*Id.*, ¶ 70) In addition, he alleges the defendants "purposefully denied him access to the Patient advocate and the Compliance Officer and/or reasonable accommodations for redress of the alleged mistreatment… in violation of the ADA." (*Id.*)

Plaintiff alleges he met with Dana Lyons, the "Chairperson and or director of the RRH board of directors," on December 3, 2015. (Doc. 14 at 3, ¶ 7; *id.* at 18, ¶ 71) He asserts during the meeting with Ms. Lyons, "he expressed his concerns about James A. Suver's apparent subversion of [the hospitals'] Compliance policy and protocols regarding the handling of privacy and discrimination violations." (*Id.* at 18, ¶ 71) He also "expressed to Dana Lyons that he felt these had been discriminatory acts based on his disability and made in retaliation for his efforts to address his mistreatment by Shirley Hartman." (*Id.* at 18-19, ¶ 71) Plaintiff asserts Ms. Lyon stated, "They figured you'd just give up." (*Id.* at 19, ¶71) In addition, Plaintiff alleges he "was again informed of the possibility that his complaints were discounted due to Plaintiff's disability, financial situation or perceived incapacity." (*Id.*) According to Plaintiff, though Ms. Lyons "assured him that she would make certain that he could file the complaints as policy dictates … Plaintiff has never been permitted to file his written requests." (*Id.*, ¶ 72)

---

[2] On the other hand, Plaintiff also alleges that he was provided "two avenues to redress his complaints, one of which was his personal appearance at the place of business." (Doc. 14 at 20, ¶ 76) He asserts, "The other option was through two telephone numbers." (*Id.*)

6

**IV.     Discussion and Analysis**

Based upon the foregoing facts, Plaintiff identifies the following causes of action in his Third Amended Complaint: (1) violation of the Americans with Disabilities Act; (2) violation of the Unruh Civil Rights Act, Cal. Civ. Code §§51-53; (3) negligence; (4) violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56-56.37; (5) violation of Cal. Health & Safety Code §1280.15; (6) violation of the Constitution of the State of California, Article 1, § 1; and (7) violation of Cal. Health & Safety Code §130200.  (*See* Doc. 14 at 1)

     **A.     Title III of the Americans with Disabilities Act ("ADA")**

Title III of the ADA prohibits discrimination by public accommodations and provides in relevant part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Thus, the Ninth Circuit determined: "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  A plaintiff need not show intentional discrimination to make out an ADA violation. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

          1.     Place of public accommodation

Under Title III, "professional offices of a health care provider, hospital, or other service establishment" are considered public accommodation.  Specifically, Title III provides: "[t]he following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—. . . a professional office of a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7)(F). Thus, Ridgecrest Regional Hospital is a place of public accommodation.

          2.     Whether the individual defendants owned, leased or operated the hospital

Plaintiff identifies several individuals as defendants in the action: James Suver, CEO; Dana

Sharell Lyons, Board of Directors Chairperson; and Janice Kern, personal pay agent. (*See* Doc. 14 at 1-2). Thus, the Court must determine whether these individuals may be held liable under Title III.

The Ninth Circuit defined the term "to operate" for purposes of Title III of the ADA as "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage." *Lentini*, 370 F.3d at 849. Because Title III seeks to limit accountability to "those in a position to ensure nondiscrimination," a relevant inquiry is "whether the individual had the power to facilitate any necessary accommodation." *Id.* (quotation marks and citations omitted). Thus, an employee in a position to make and direct employees to implement policy decisions could be liable under Title III of the ADA. *Lentini*, 370 F.3d at 849. In contrast, employees who merely implement company-wide policies cannot be personally liable under Title III of the ADA. *See Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1335 (N.D. Cal. 1994) (dismissing Title III ADA claim against a defendant physician because he was "not on the hospital's board of directors, and he [had] no power to enact or amend hospital policy"); *Butler v. WinCo Foods, LLC*, 2013 WL 12076010, at *3 (C.D. Cal. Mar. 11, 2013) (finding a store manager who implemented a company-wide policy did not "operate" a place of public accommodation under Title III of the ADA).

Plaintiff alleges that James Suver and Dana Lyons "had the authority to implement changes and policy" and had "the power to facilitate any necessary accommodation." (Doc. 14 at 2-3, ¶¶ 6-7) As the CEO of the hospital and the chairperson of the board of directors (*see* Doc. 6 at 2-3), it would appear that Mr. Suver and Ms. Lyons had the authority to make and direct employees to implement policy decisions for the hospital. *See Aikins*, 843 F. Supp. at 1335. On the other hand, Plaintiff fails to allege facts to support a conclusion that Ms. Kern, as a personal pay agent, had sufficient authority to be deemed an "operator" of the hospital under the meaning of Title III.[3]

### 3. The requested accommodation

Plaintiff fails to clearly identify the accommodation he believed that he should have received at

---

[3] It appears Plaintiff no longer seeks to state a claim for a violation of Title III against Stephanie Meeks and Kristen Hendon, as Plaintiff does not identify these individuals as defendants in the Third Amended Complaint. Nevertheless, the Court notes Plaintiff's claim for a violation of Title III against Ms. Meeks and Ms. Hendon—which was raised in the Second Amended Complaint— suffered from the same infirmities. There are no facts that Ms. Meeks, as the "Safety and Regulatory Compliance Manager," had the authority to do more than direct compliance with the hospital policy. Likewise, there are no facts that Ms. Hendon, a patient advocate, controlled hospital policies.

8

the hospital. (*See* Doc. 14 at 17, ¶68) In addition, he offers conflicting information regarding the access he had to the services offered at the hospital. For example, though Plaintiff alleges he was denied access to a patient advocate, he previously alleged that he received the telephone number for the patient advocate, with whom Plaintiff discussed the release of his private information and "his efforts to lodge a complaint." (*See* Doc. 6 at 43, ¶ 84) Plaintiff also contends Ms. Meeks and Ms. Hendon "failed to establish *effective* communication with Plaintiff by or failing to respond to Plaintiff's many requests for service and for access to RRH's Process as required to file complaints." (Doc. 14 at 18, ¶68, emphasis added)

The Ninth Circuit explained that "a place of public accommodation need not make a reasonable modification unless it is necessary to provide an individual with a disability full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations." *Murphy v. Bowl,* 150 Fed. App'x 661, 663 (9th Cir. 2005). Significantly, the facts alleged both in the Third Amended Complaint and the prior pleadings indicate that Plaintiff received the requested services from the hospital, including access to a patient advocate (whose telephone number was given to Plaintiff, and with whom he had a conversation regarding his concerns) and fora to address his grievances and complaints (including conversations with the patient advocate and the chairperson of the board of directors). Specifically, Plaintiff asserts "he was provided … two avenues to redress his complaints," including "his personal appearances at the place of business" and "two telephone numbers." (*Id.* at 20, ¶ 76)

Plaintiff fails to allege how the communication by mail from Ms. Meeks and by telephone with Ms. Hendon was not effective or appropriate. Likewise, there are no facts supporting a conclusion that accommodations to *not* communicate by mail or telephone were necessary because of Plaintiff's disabilities. Rather, it appears that Plaintiff was merely dissatisfied with the result of these communications. Because Plaintiff fails to allege an accommodation was required under Title III for additional services beyond those provided, the facts alleged do not state a cognizable claim for a violation of Title III.

### B. Title V of the ADA

Although Plaintiff does not clearly identify a claim for retaliation in violation of the ADA, his

complaint includes allegations that individuals employed by Ridgecrest Regional Hospital acted "in retaliation" for his "chastisement" of Ms. Hartman. (*See, e.g.*, Doc. 14, ¶¶ 6, 19; 24) In addition, Plaintiff asserts that "in retaliation for his requests to complain of abuses he was denied access to RRH's established Grievance/complaint process by Actors Meeks and Henden." (*Id.* at 34, ¶ 123)

Title V of the ADA prohibits "retaliation and coercion of individuals with disabilities when they oppose an unlawful practice under the ADA or encourage another individual exercising a right granted under that statute." *Chipman v. Nelson*, 2014 WL 4635117 at *8 (E.D. Cal. Sept. 10, 2014). To state a cognizable claim for retaliation in violation of the ADA, a plaintiff must allege facts to support the conclusions that (1) he engaged in protected activity, (2) he suffered an adverse action, and there is (3) a causal link between the two. *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003) (applying the shifting burdens of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Plaintiff fails to allege that he engaged in an activity protected by the ADA through making complaints about Ms. Hartman's conduct to other hospital employees. There are no facts supporting a conclusion that Plaintiff opposed an action that was unlawful *under the ADA*, or that he raised concerns about exercising his rights under the ADA with hospital staff. Further, Plaintiff fails to allege facts to support a conclusion that he suffered an adverse action within the meaning of the ADA as a result of actions taken by the named defendants. Consequently, to the extent Plaintiff seeks to state a claim under Title V, the facts alleged are insufficient.

### C.  Supplemental Jurisdiction

The remaining causes of action in Plaintiff's Third Amended Complaint arise under state law. (*See* Doc. 14 at 1) Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." Significantly, the Ninth Circuit determined that "[w]hen federal claims are dismissed before trial . . . pendant state claims also should be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) (internal quotation marks omitted); *see also Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) (recognizing the propriety of dismissing supplemental state law claims without prejudice when the district court has dismissed the federal claims over which it had original jurisdiction).

At this juncture—because Plaintiff failed to state a cognizable claim under federal law—the Court declines analyze the merits of his remaining claims. The Court recommends supplemental jurisdiction be declined, and that the claims under state law also be dismissed without prejudice.

## V.     Findings and Recommendations

Plaintiff fails to state a cognizable claim under federal law, thereby invoking this Court's jurisdiction. The Court has granted him leave to amend the complaint several times and he has repeatedly changed the claims he sought to prosecute under federal law to invoke this Court's jurisdiction. Given the repeated failures to state a claim and what appears to be an ever-shifting description of the operative events, the Court finds any further opportunity to amend would be futile, and dismissal of the complaint is appropriate. *See Lopez*, 203 F.3d at 1128 (dismissal of a *pro se* complaint for failure to state a claim is proper if an opportunity to amend would be futile). Thus, the Court **RECOMMENDS**:

1. Plaintiff's Third Amended Complaint be **DISMISSED** without prejudice; and
2. The Clerk of Court be DIRECTED to close the action.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Any objections SHALL not exceed 15 pages in length, including exhibits.** Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **March 14, 2019**              **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE